652 F.2d 673
 108 L.R.R.M. (BNA) 2721, 92 Lab.Cas. P 13,083
 Kenneth and Mary M. McGLAUGHLIN, Co-Partners, d/b/a
Hudson-High Super Duper, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Retail Clerks Union Local No. 1059, United Food & Commercial
Workers International Union, AFL-CIO, Intervenor.
 No. 80-1218.
 United States Court of Appeals,
Sixth Circuit.
 July 2, 1981.
 
 Peter J. Gee, John F. Gillespie, Lucas, Prendergast, Albright, Gibson, Newman & Gee, W. Joseph Strapp, Columbus, Ohio, for petitioners.
 Elliott Moore, Deputy Associate Gen. Counsel, National Labor Relations Bd., Washington, D. C., Emil C. Farkas, Director, Region 9, N.L.R.B., Cincinnati, Ohio, Collis Stocking, Washington, D. C., for respondent.
 Before LIVELY, KEITH and MERRITT, Circuit Judges.
 
 
 1
 Kenneth and Mary McGlaughlin, co-owners of a Super Duper Market in Columbus, Ohio, petition this Court to review an NLRB decision (247 N.L.R.B. No. 199) that they violated § 8(a)(1) of the National Labor Relations Act by coercively interrogating a job applicant concerning his union activities, and § 8(a)(3) by refusing to hire that applicant because of his union activities. They also request that this Court deny enforcement of the Board's order, which requires that the applicant be offered immediate employment in the position applied for (or one substantially equivalent) and that he be given backpay to the date he would have commenced employment. The NLRB cross-petitions for enforcement of its order. 29 U.S.C. §§ 160(e) and (f).
 
 
 2
 The case arises from petitioners' failure to hire a job applicant for the position of produce clerk. Shortly after the super market opened under the petitioners' ownership, vacancies appeared imminent in two of its produce positions one because a clerk failed to appear for work and the other because a clerk planned on leaving the job to return to college. Petitioner Kenneth McGlaughlin told his manager to contact Gary Motz, who had earlier applied for a position in the produce department, to see if he was still interested in employment there. At the time Motz worked full-time as a truck driver and part-time as a produce clerk at another store. The focal event of the case is a telephone conversation between Douglas Jones, the manager of petitioner's store, and Motz. After reiterating his interest and availability for the position, Motz told Jones that he was still working at the other grocery store but was on strike supporting a union recognitional drive. The two then argued about the value of unions. The close of the conversation is disputed. Petitioners claim that Jones simply thanked Motz for his time and said he had all the information he needed. Motz testified, the administrative law judge found, and the Board argues, that Jones told Motz he would be wasting his time if he came to the store to work out any further details of the job. That was the final contact between the parties. The clerk who had planned to return to college decided to stay on at the market, and petitioners hired no one in Motz's stead.
 
 
 3
 Charges were filed with the NLRB shortly thereafter. After a hearing the administrative law judge found that petitioners had violated §§ 8(a)(1) and (3) (App. 91-106). On review the Board upheld the bulk of the administrative law judge's decision (App. 106-14), but it modified the remedy. The Board found that when contacted by Jones, Motz was being considered for immediate employment to replace the employee who did not appear for work, and not to replace the student (id. at 110 & n.6). The Board therefore altered the remedy to require petitioners to offer Motz employment in the same or similar position regardless of whether one had later become available, and ordered backpay to the date Motz would have commenced work had he been hired shortly after his phone conversation with Jones.
 
 
 4
 Petitioners challenge the Board's decision on three grounds. First they argue that the evidence does not demonstrate that the phone conversation, including the discussion about unions, amounted to an interrogation, nor that any coercive element existed. The Board argues that Jones' expression of anti-union sentiment and questioning Motz as to his sympathies, especially in light of the fact that Motz was not hired, lent coercive overtones to the conversation. Petitioners' second argument is that the decision not to hire was based upon legitimate economic reasons, viz. falling produce sales and the decision of the college student to remain on the job. The Board responds that the decision not to hire Motz was motivated solely by anti-union animus, evidenced by Jones' complete about-face during the phone conversation. The fact that later economic considerations could support a decision not to hire a produce clerk cannot serve as a post hoc justification for a decision that at the time it occurred was based upon illegal motives. Petitioners state finally that the Board erred in modifying the administrative law judge's remedy, and they rely again on the argument that no position in the produce department was available or filled by any other applicant. In response, the Board again relies upon its finding that a job opening existed when Motz was interviewed and for which he would have been hired in the absence of the unfair labor practices.
 
 
 5
 Each of these issues arises from a question of fact, and the scope of judicial review of a factual finding by the Board is narrow. Board determinations will be upheld if supported by substantial evidence in the record, even if the court might reach a different conclusion were it to resolve the controversy de novo. NLRB v. S.E. Nichols of Ohio, Inc., 472 F.2d 1228 (6th Cir. 1972); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). A review of the record in this case convinces us that sufficient evidence exists to support the Board's conclusion as to the coercive nature of the telephone conversation, petitioners' motivation in refusing to hire Motz, and petitioners' initial intent to hire a produce clerk to replace the clerk who failed to report to work. Although the evidence may be open to different constructions, upon a review of the entire record we do not think that the Board's interpretation is unsupported by substantial evidence. Universal Camera, supra, at 487-88, 71 S.Ct. at 463-64.
 
 
 6
 Accordingly, the petition to reverse the Board's order is denied, and the cross-petition for enforcement is granted.